UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MIKE KREIDLER,

    Plaintiff,

v.

DANNY L. PIXLER, *et al.*,

    Defendants.

Case No. C06-0697RSL

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on plaintiff's motion for partial summary judgment and defendants' motion for summary judgment. Plaintiff, the Insurance Commissioner for the State of Washington, seeks to hold defendants responsible for amounts allegedly owed to Cascade National Insurance Company ("Cascade") for the workers' compensation insurance coverage it provided.

For the reasons set forth below, the Court denies plaintiff's motion and grants defendants' motion in part.

## II. DISCUSSION

**A.    Background Facts.**

Some of the facts underlying this case are set forth in the Court's Order Granting in Part and Denying in Part Motion to Dismiss (Dkt. #51) and will not be repeated here. This order sets forth additional facts relevant to these motions.

Midwest Merger Management ("Midwest") was created by defendants Anthony Huff and Danny Pixler, although they made their wives the majority owners. Midwest acquired a corporate shell, Certified Services, Inc. ("Certified") as a holding company. Certified then acquired several professional employer organizations ("PEOs"). A PEO would contract with an employer/client, become the co-employer of the client's employees, and provide employee services, including workers' compensation coverage. American Staff Resources of California, Inc., ("ASRC"), a wholly-owned subsidiary of Certified, operated as the PEO for employer/clients in California. ASRC contracted with Cascade for Cascade to provide workers' compensation insurance for those employees in 2004.

Cascade provided workers' compensation coverage for over 15,000 workers in California. The coverage began on February 13, 2004. By law, Cascade was responsible for paying all claims regardless of whether ASRC paid its premiums.

Cascade received payments under the workers' compensation policy of over $8 million for January 8, 2004 to March 13, 2005, but alleges that it was owed millions more. Plaintiff Mike Kreidler has brought this action as the receiver for Cascade.

CURA, the predecessor to Certified, filed for bankruptcy in Florida on May 12, 2005 (the "bankruptcy proceedings"). On February 24, 2006, the Chapter 11 trustee entered into a settlement agreement with Certified, Midwest, Huff, Pixler, and other entities who are not parties in this case. As part of the settlement, CURA was substantively consolidated with Certified and with all assets of Certified, including its

subsidiary ASRC. In July 2006, the deputy receiver for Cascade filed a proof of claim in the bankruptcy proceedings that the receiver's claim on behalf of Cascade amount to $2 million.

Plaintiff seeks an order stating (1) the amount due to Cascade, (2) that Midwest is directly liable to Cascade for the workers' compensation policy amounts because Cascade is a third party beneficiary under the Risk Allocation Agreement, and (3) that the corporate veil of Midwest should be pierced rendering Huff personally and individually liable for the workers' compensation coverage amounts due to Cascade. Defendants seek summary judgment on all claims.

**B.  Summary Judgment Standard and Evidentiary Issue.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary

judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

Plaintiff has moved to strike the declaration of Anthony Huff, (Dkt. #157-2) ("Huff Declaration"), which defendants filed as an exhibit to the declaration of their counsel. As plaintiff notes, the declaration is not sworn under penalty of perjury under the laws of the State of Washington or of any other state. Nor does it state the date and place of execution. Therefore, the declaration does not meet the requirements of Washington law. RCW 9A.72.085. The declaration is not notarized, so it is not an "affidavit" under Federal Rule of Civil Procedure 56. Although plaintiff raised the deficiency approximately three months ago, Huff did not correct his declaration. The failure to do so, particularly in light of the allegations in this case, appears to have been intentional. Accordingly, the Court did not consider the Huff Declaration.

**C.     Analysis.**

**1.     The Risk Allocation Agreement and Piercing the Corporate Veil.**

Although Cascade contracted with ASRC, plaintiff contends that Midwest is liable for the amount due to Cascade. Plaintiff contends that Cascade is a third party beneficiary to a Risk Allocation Agreement ("RAA") between Certified and Midwest. Under the RAA, Midwest agreed to assume the workers' compensation obligations for Certified and any subsequently acquired subsidiaries, which included ASRC. The RAA provides,

> Midwest shall assume all responsibility for workplace accidents that occur during the term of this Agreement. Specifically, Midwest shall (i) utilize its more stable and established business assets to retain and service such Workers Compensation Insurance coverage as Midwest deems reasonable and prudent at its sole cost and expense . . . .

Declaration of Victoria Vreeland, (Dkt. #147) ("Vreeland Decl."), Ex. B. The parties

agreed that the RAA would be construed pursuant to the laws of New York. Id. Pursuant to the RAA, Midwest was responsible for providing a workers' compensation program and making payments thereunder. Russo Dep. at pp. 149-50; Cunningham Dep. at pp. 57-58. Certified and its subsidiaries did not retain any of the workers' compensation risk. Cunningham Dep. at p. 61.

The employers/clients made their workers' compensation payments to ASRC. The premiums were deposited into a consolidated bank account of Certified and were all paid to Midwest. Bean Dep. at pp. 70, 145; Cunningham Dep. at p. 64. Midwest was responsible for making payments to Cascade and did so to some extent.

New York has adopted the Restatement (Second) of Contracts, Section 302, approach to determine whether an entity is a third-party beneficiary. Section 302 distinguishes between an "intended" and an "incidental" beneficiary as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Septemberide Publ'g, B.V. v. Stein & Day, Inc., 884 F.2d 675, 679 (2d Cir. 1989) (quoting Section 302). Plaintiff argues that the parties intended for the RAA to benefit Cascade because Midwest was required to pay for workers' compensation coverage and Cascade ultimately provided that coverage. Plaintiff relies on cases in which courts stated that "[w]here performance is to be rendered directly to a third party under the terms of an agreement, that party must be considered an intended beneficiary." Cauble v. Mabon

Nugent & Co., 594 F. Supp. 985, 991 (S.D.N.Y. 1984). Despite the breadth of that statement, New York courts have applied the doctrine in cases in which one of the contracting parties had a preexisting duty owed to the alleged third party beneficiary. See, e.g., Flickinger v. Harold C. Brown & Co., Inc., 947 F.2d 595, 600 (2d Cir. 1991) (explaining that plaintiff was a third party beneficiary where one party contracted with a second party to provide services to its clients; plaintiff was already a client of the first party when the contract was executed); Cauble, 594 F. Supp. at 991 (same). In this case, at the time the RAA was executed, the parties did not have any preexisting debt to or relationship with Cascade. The RAA became effective on January 1, 2002, more than two years prior to the inception of the Cascade/ASRC program.

Furthermore, the RAA does not mention or reference Cascade. "Although a party need not necessarily be specifically mentioned in a contract to be considered a third party beneficiary, the parties' intention to benefit the third party nonetheless must be revealed on the face of the agreement." Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 163 (S.D.N.Y. 1998) (internal citation and quotation omitted). In fact, the RAA evidences an intent not to benefit parties other than the signatories, their successors, and their assignees: the RAA states that it is "binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns." RAA at § 13. That provision is not consistent with an intent to confer a benefit on a third party. See, e.g, Piccoli A/S, 19 F. Supp. 2d at 163. Accordingly, the Court denies plaintiff's request for summary judgment on this issue.[1]

---

[1] The RAA itself is sufficient to deny plaintiff's motion. Even if the Court were to find the RAA ambiguous and look beyond it, it would deny the motion. In cases in which the alleged third party beneficiary was not mentioned by name, another contemporaneous agreement did reference the third party. See, e.g., Septemberide, 884 F.2d at 679

Because the Court has denied plaintiff's request to find liability against Midwest based on the RAA, it would be premature to determine the amount of damages owed or to analyze whether to pierce Midwest's corporate veil. The Court leaves resolution of those issues for another day. See, e.g., Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc., 185 F.3d 978 (9th Cir. 1999) ("The veil piercing doctrine does not come into play . . . unless and until [plaintiff] establish[es] [his] right to a money judgment against [defendants]").[2]

### 2. Claims for Unjust Enrichment and Constructive Trust.

Defendants contends that the Court should dismiss plaintiff's "claims" for unjust enrichment and constructive trust because those doctrines are remedies, not claims. Plaintiff concedes that his claims for unjust enrichment and constructive trust are not cognizable as claims. He argues that those claims should have been labeled in the complaint as "Theft," "Conversion," "Wrongful taking," or "Wrongful Diversion." Plaintiff's Opposition at p. 24. In fact, the second amended complaint specifically alleges that defendants engaged in "theft of premiums and fees" due to Cascade. Second Amended Complaint at ¶ 10.3. That allegation is sufficient to give defendants notice of plaintiff's allegation. Furthermore, although defendants argue that plaintiff has not provided any evidence to support those allegations, forensic examiner and CPA Paul

---

(explaining that the timing of two agreements and the mention by name of the plaintiff suggested that one party intended for the second party's payments to it to be used to satisfy its obligations to plaintiff); United States v. Ogden, 406 F. Supp. 1090, 1093 (E.D.N.Y. 1973). In this case, there is no such contemporaneous agreement referencing Cascade.

[2] Defendants contend that the Court must dismiss plaintiff's attempt to pierce the corporate veil of the bankrupt defendants. However, plaintiff is not attempting to pierce their corporate veils.

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 7

Sutphen found that "funds were diverted." Sutphen Dep. at p. 17; Vreeland Decl., Ex. K (Sutphen Report). Certified and ASRC billed more than $14 million to their clients, all of which was "paid over" or "just passed through" to Midwest. Cunningham Dep. at pp. 133, 136. However, Cascade was paid only about $8 million. Declaration of Lai Morrell (Dkt. #148) at ¶ 4, Ex. C.

Moreover, plaintiff contends that defendants diverted funds that should have gone *to Cascade*, so plaintiff, not a bankrupt entity, is the victim of the alleged theft. Plaintiff contends that the bankruptcy trustee "has asserted that every penny ASRC paid to Cascade through Midwest . . . was fraudulently transferred." Plaintiff's Reply at p. 5. Despite that allegation, there was no such finding in the bankruptcy proceedings. Defendants have not shown that any theft claim is precluded by the bankruptcy proceedings. Accordingly, plaintiff may proceed with his theft claim and pursue the doctrines of unjust enrichment and/or constructive trust.

### 3. Fraudulent Conveyance.

Defendants contend that plaintiff's claim for fraudulent conveyance belongs to the bankruptcy trustee. If a creditor's claim could have been asserted by the debtor, the claim is the exclusive property of the bankruptcy estate/bankruptcy trustee. 11 U.S.C. § 544. The Court previously held that the adversary proceeding connected with the bankruptcy proceeding, by its own terms, did not have *res judicata* or collateral estoppel effect in this litigation. Order Granting in Part and Denying in Part Motion to Dismiss (Dkt. #51) at p. 11. Notably, the trustee in the bankruptcy proceeding has not alleged that plaintiff is pursuing claims that belong to the bankruptcy estate.

Despite defendants' assertion, it does not appear that plaintiff is asserting a fraudulent conveyance claim. That claim does not appear in the second amended

complaint, nor does plaintiff defend the claim in his opposition to the motion. Rather, plaintiff claims theft of premiums that belonged to and should have gone to Cascade. Because the premiums were the alleged property of Cascade, and not of a bankrupt entity, the claim does not belong to the bankruptcy trustee.

**4.   Breach of Fiduciary Duty.**

Plaintiff argues that Midwest owed Cascade a fiduciary duty because Midwest was acting as an insurer or as a broker. However, the second amended complaint does not include a breach of fiduciary duty claim against Midwest. Second Amended Complaint at ¶¶ 8.1-8.4. Both the title of that claim and the allegations therein state that the claim is against Pixler, Huff, and Certified. Nor has plaintiff moved to amend the complaint to add such a claim against Midwest.

Plaintiff also contends that Huff and Pixler, as owners of Midwest, owed a fiduciary duty to review Midwest's books and records. Even if they owed that duty to Midwest, there was no such duty to Cascade or any "special relationship of trust and confidence" with Cascade. Favors v. Matzke, 53 Wn. App. 789, 795 (1989). Accordingly, plaintiff's breach of fiduciary duty claim is dismissed.

**5.   Negligent Misrepresentation and Fraud.**

Washington has adopted Section 551 of the Restatement (Second) of Torts, which provides that a party to a business transaction is under a duty to disclose to the other party (1) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading. See, e.g., Van Dinter v. Orr, 157 Wn.2d 329, 332 (2006) (citation omitted). A duty arises "when the facts are peculiarly within the knowledge of one

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 9

person and could not be readily obtained by the other; or where, by the lack of business expertise of one of the parties, the other takes advantage of the situation by remaining silent." Id. at 334 (citing Colonial Imports, Inc. v. Carlton Nw., Inc., 121 Wn.2d 726, 732 (1993)). Plaintiff must present "clear, cogent, and convincing evidence" of the misrepresentation, and the question of whether a duty to disclose exists is a question of law for the Court to resolve. Van Dinter, 157 Wn.2d at 333.

In this case, Anderson, who negotiated the workers' compensation transaction on behalf of Cascade, was experienced in the field of business and insurance. There was no lack of expertise on plaintiff's side of the transaction. The Court therefore considers whether there were facts peculiarly within the knowledge of defendants that could not have been readily ascertained by Cascade/Anderson. Plaintiff contends that defendants failed to disclose the nature of the relationship between ASRC, the insured party, and Midwest, including the fact that Midwest intended to take all of the premium funds. However, Anderson stated that once he found out how Midwest, Certified, and ASRC intended to conduct business, he did not have a problem with it: "And how the [premium money] flowed through the organization, as long as it was in the staple group, I felt that that was okay." Declaration of David Hemminger, (Dkt. #162), Ex. B at pp. 41-42. Therefore, because that omission was not material, it cannot support a misrepresentation claim.

Similarly, plaintiff cannot support his claims based on the alleged failure to disclose more about the CNA lawsuit. That lawsuit was a matter of public record, and Anderson engaged an attorney to investigate the matter for him.

Plaintiff argues that Pixler periodically told Anderson that Certified was "financially strong, capable, and 'good for it.'" Plaintiff's opposition at p. 20 (quoting

Declaration of Harold Anderson (Dkt. #36) at ¶ 10). The statements about Certified's financial strength were vague, and plaintiff could have obtained additional information about Certified's financial condition from publically available annual and quarterly financial reports filed with the SEC. As for the statement that Certified was "good for" and "standing behind" ASRC's debt, those statements are too vague and untethered to any specific time or place to support a misrepresentation or fraud claim. Also, promises of future conduct, while potentially actionable for breach of contract, cannot constitute misrepresentation. See, e.g., Shook v. Scott, 56 Wn.2d 351, 355 (1960) (explaining that "a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made").

Plaintiff also contends that defendants failed to disclose the ownership of Midwest and the identity of Anthony Huff "as the one in control, possession, and in charge of the funds for the purchasing entity to pay capital and surplus to Cascade and also the premium funds from the employer-clients for the workers' compensation program payable to Cascade." Plaintiff's Opposition at p. 19. Huff intentionally placed the ownership of Midwest with his wife, his office manager/secretary, and Pixler's wife as an apparent artifice, even though none of the women exercised any authority or control over Midwest. Plaintiff states that if Cascade had known of Huff's involvement, it could have learned of the criminal charges against him, his criminal plea, and his license revocation for misappropriation of premiums. Although defendants argue that Cascade was aware of Huff's involvement, the record does not support their assertion.[3] Cascade owner Harold

---

[3] For example, defendants contend that a February 25, 2004 e-mail referenced Cascade's investigation of Huff. Defendants' motion and reply do not include a copy of that e-mail. Even if they did, by the alleged date of the e-mail, Cascade had already commenced providing coverage and defendants had tendered payment to Cascade.

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 11

1  Anderson stated in a sworn declaration that he did not learn of Huff's involvement until
2  after the workers' compensation coverage had issued. Declaration of Harold Anderson,
3  (Dkt. #154) at ¶ 6; <u>see also</u> Anderson Dep. at pp. 50-51 ("Huff emerged for the first time
4  about four months after we had entered into this agreement. I didn't have any knowledge
5  of what he was or who he was"). In addition, Huff's role in the transaction could not
6  have been readily ascertained by Cascade. Moreover, defendants initiated and pursued
7  the transaction with Cascade, and they gained a significant benefit from the transaction:
8  the needed coverage for workers in California. Defendants have not denied that they had
9  a statutory duty in this insurance matter: "The business of insurance is one affected by the
10 public interest, requiring that all persons be actuated by good faith, abstain from
11 deception, and practice honesty and equity in all insurance matters." RCW 48.01.030.
12 Although the statute does not include a private right of action, it sets forth a duty of
13 honesty in insurance matters.
14     For all of these reasons, defendants had a duty to disclose Huff's involvement in
15 the transaction. Plaintiff can pursue his fraud and negligent misrepresentation claims
16 based on the theory that defendants failed to disclose, and in fact concealed, the
17 ownership of Midwest and the involvement of Anthony Huff.

---

Defendants also present the deposition testimony of John Ference, the Chief Underwriting Officer at Cascade, in a misleading manner by presenting several questions and answers from different points in his deposition as if it were a single line of questioning. Defendants' Motion at pp. 6-7. When the deposition pages are viewed in their proper order, the testimony is so disjointed and vague that the Court cannot conclude as a matter of law that Cascade knew of Huff's involvement before the transaction was consummated. In fact, Ference stated in his deposition that he became concerned about Huff's involvement in February or March 2004, *after* the policy coverage had already commenced. Ference Dep. at p. 99.

**6. Consumer Protection Act.**

A successful private CPA claim requires the establishment of the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) that injures the plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn. 2d 778, 780 (1986). Defendants have argued that none of them except ASRC can be liable for a CPA violation because ASRC was the only party with whom Cascade had a contract. Defendants cite International Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 758 (2004), which explained, "To be liable under the CPA, there must be a contractual relationship between the parties." Although plaintiff disagrees with that statement, he has not cited any contrary authority. Accordingly, the Court dismisses plaintiff's CPA claim against all defendants except ASRC.[4] Plaintiff has acknowledged that it is not pursuing claims against ASRC. Plaintiff's Opposition at p. 5. Accordingly, plaintiff's CPA claim is dismissed.

**7. Criminal Profiteering and Civil Conspiracy.**

Plaintiff accuses all of the defendants of violating Washington's Criminal Profiteering Act. Defendants contend that the claim fails as a matter of law because plaintiff has not produced any evidence of criminal activity. The statute defines criminal profiteering activity as "any act, including any anticipatory or completed offense,

---

[4] Plaintiff also alleges, in one conclusory sentence, that "there are several contracts or contractual transactions between Cascade and defendants, or their agents or nominees, including the purchase transaction and the workers' compensation policy." Plaintiff's Opposition at p. 27 fn.79. Plaintiff has not shown that the other defendants were parties to those contracts.

1  committed for financial gain, that is chargeable or indictable under the laws of the state in
2  which the act occurred and, if the act occurred in a state other than this state, would be
3  chargeable or indictable under the laws of this state had the act occurred in this state and
4  punishable as a felony and by imprisonment for more than one year regardless of whether
5  the act is charged or indicted." See RCW 9A.82.010(4).

6  Plaintiff also contends that Mr. Pixler, the Huffs, Midwest, and Certified engaged
7  in a civil conspiracy. "To establish a civil conspiracy, [plaintiff] must prove by clear,
8  cogent, and convincing evidence that (1) two or more people combined to accomplish an
9  unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and
10 (2) the conspirators entered into an agreement to accomplish the conspiracy." All Star
11 Gas, Inc. of Washington v. Bechard, 100 Wn. App. 732, 740 (2000).

12  Defendants do not dispute that misappropriation of premiums would be chargeable
13 as theft, a felony under state law. Defendants contend that both claims must be dismissed
14 because plaintiff has failed to adduce any evidence of criminal activity by any of them.
15 However, as set forth above, defendants took in approximately $14 million in premiums
16 but paid only $8 million to Cascade. Plaintiff's forensic accountant has opined, "A large
17 amount of the funds received by Midwest were disbursed to insiders and other parties
18 related to Certified and Midwest, and used to pay personal, non-business related items. . .
19 . Midwest was used as a vehicle to distribute large sums of money for personal gain.
20 This activity resulted in the non-payment of legitimate expenses and obligations,
21 including monies due for workers' compensation coverage." Sutphen Report at p. 9.
22 That evidence is sufficient to deny defendants' motion for summary judgment on the
23 claims for civil conspiracy and criminal profiteering.

### 8. Breach of Contract and Breach of Duty of Good Faith and Fair Dealing.

Plaintiff alleges that Midwest, Certified, ASRC, Pixler, and Huff breached the Cascade/ASRC workers' compensation insurance contract and the duty of good faith and fair dealing. Defendants counter that only ASRC was a party to that contract and any claim against it can only be addressed in the bankruptcy proceeding. To the extent that plaintiff is trying to recover for a breach of the workers' compensation contract, plaintiff can only recover from the parties to that contract: Certified and ASRC. Certified is in bankruptcy proceedings, and plaintiff is not pursuing claims against ASRC. Therefore, plaintiff cannot recover in this action for an alleged breach of the contract with ASRC/Certified.

Plaintiff also contends that Huff and Pixler are liable as "promoters" because ASRC was not incorporated or a lawful entity at the time that the workers' compensation insurance was bound on February 13, 2004. An individual who purports to act as a corporation or on behalf of one when the corporation has not yet been formed is liable as a promisor of the contract. RCW 23B.02.040; see also White v. Dvorak, 78 Wn. App. 105, 112 (1995). The second amended complaint, however, does not contend that Huff purported to act as ASRC or on its behalf to Cascade before the contract was consummated. In fact, plaintiff's negligent misrepresentation and fraud claims are premised on the theory that plaintiff was unaware of Huff's involvement during the "promotion" time frame. Therefore, Huff cannot be liable as a promoter. Pixler, however, entered into a contract on ASRC's behalf before ASRC was incorporated. Cascade did not agree to seek relief solely from ASRC. Pixler can be held liable as a promoter of ASRC. See, e.g., White, 78 Wn. App. at 112 ("When a person enters into a

1  contract in the name of a corporation, and the corporation is subsequently formed, both
2  the individual and the corporation are party promisors to the contract unless the other
3  party knew of the nonexistence and agreed to look solely to the corporation").

4  Plaintiff further argues that Midwest should be estopped from denying liability to pay for the workers' compensation obligations. Promissory estoppel is a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the promise, and which does induce such action or forbearance and is binding if injustice can be avoided only by enforcement of the promise. See, e.g., Corbit v. J.I. Case, 708 Wn.2d 522, 538 (1967) (citing Restatement, Contracts § 90 (1932)). The elements include (1) a promise, (2) which the promisor should reasonably expect to cause the promisee to change his or her position, (3) which does cause the promisee to change his position (4) justifiably relying on the promise, (5) in such a manner that injustice can be avoided only by enforcement of the promise. Id. Defendants did not respond to plaintiff's promissory estoppel argument. Moreover, as set forth above, Pixler promised Cascade that Midwest would assume financial responsibility for liabilities on the ASRC contract. The purpose of that promise was to induce Cascade to provide the workers' compensation coverage, and Cascade did so. Pixler purported to have control over Midwest, and Cascade's reliance on the promise was reasonable. Furthermore, now that Cascade cannot recover from ASRC or Certified, injustice can be avoided only by enforcing the alleged promise against Pixler and Midwest, on whose behalf Pixler made the promise. Accordingly, plaintiff can pursue a promissory estoppel theory against Pixler and Midwest.

Finally, plaintiff contends that Huff and Pixler are liable as the alter egos of Midwest. Consideration of that argument would be premature because the doctrine is

relevant only if Midwest is unable to pay a judgment to plaintiff.  See, e.g., Peacock v. Thomas, 516 U.S. 349, 354 (1996).  There is no evidence that Midwest would be unable to pay a judgment.

### III.  CONCLUSION

For all of the reasons set forth above, plaintiff's motion for partial summary judgment (Dkt. #146) is DENIED and defendants' motion for summary judgment (Dkt. #149) is GRANTED IN PART AND DENIED IN PART.  The Court dismisses plaintiff's claims for breach of fiduciary duty and for a violation of the Consumer Protection Act.  Plaintiff may proceed with his remaining claims as set forth above.

DATED this 22nd day of May, 2009.

*[signature]*
Robert S. Lasnik
United States District Judge