UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIKE KREIDLER,<br><br>        Plaintiff,<br><br>   v.<br><br>DANNY L. PIXLER, *et al.*,<br><br>        Defendants. | Case No. C06-0697RSL<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION *IN LIMINE* |

This matter comes before the Court on plaintiff's motion *in limine* to preclude the introduction of various evidence. As an initial matter, plaintiff requests that the Court exclude several categories of evidence to which defendants do not object, including (1) evidence of settlement offers and related issues under Federal Rule of Evidence 408, (2) the display of any trial exhibit before the Court has admitted it into evidence or given permission to display it, (3) any documents or records that were not produced in discovery, and (4) any statement or suggestion that the parties filed motions *in limine* and sought to exclude evidence. Those requests are consistent with the Federal Rules of Evidence, they are granted, and the exclusions apply to all parties. At the parties' request, the Court heard oral argument in this matter on April 12, 2010.

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION *IN LIMINE*- 1

**A.     Bankruptcy-Related Evidence: Defendants' Witnesses Battista, Rice, and Feltman and Documents Regarding the Bankruptcy.**

Plaintiff seeks to exclude the testimony of three witnesses they claim were not timely disclosed by defendants: Paul Battista and Arthur Rice, attorneys in Florida involved with the Certified bankruptcy, and James Feltman, the bankruptcy trustee in Florida. Defendants have indicated that they will testify regarding the Certified bankruptcy, the discharge of ASRC, and the proof of claim filed by the insurance commissioner. The Court will not exclude the witness based on their late disclosure because plaintiff has not shown that the failure to disclose them in a timely manner was anything more than harmless. See, e.g., Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (explaining that a violation of Rule 26 may result in sanctions under Rule 37 unless the proffering party can show that it had a substantial justification for its failure, or that its failure was harmless). Rather, plaintiff has been aware of the bankruptcy proceedings and related issues since the inception of this lawsuit.

Plaintiff also contends that in addition to failing to timely disclose the witnesses, their testimony is not relevant. Plaintiff notes that this Court has ruled that the bankruptcy proceeding does not have *res judicata* or collateral estoppel effect in this case, and it does not preclude plaintiff from pursuing claims against the Huffs, Pixler, or Midwest. Order on Motion for Summary Judgment at pp. 8-9. However, plaintiff's proof of claim is relevant to plaintiff's valuation of Cascade's damages.[1] The Court has already held that plaintiff is not estopped from seeking damages in excess of the proof of claim,

---

[1] During oral argument, defense counsel referred to a second bankruptcy-related document that was generated by the trustee. Because the parties did not address that document in their memoranda, the Court will not address it here. Rather, this order addresses only the proof of claim filed by plaintiff.

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION *IN LIMINE*- 2

so estoppel will not apply. The document is not unduly prejudicial. Therefore, defendants may introduce the document and call one witness to explain what it is. Any additional presentation of testimony regarding the document would be unnecessary and cumulative.

Other than the proof of claim document and an explanation thereof, any other information and testimony about the bankruptcy proceedings is only marginally relevant at best. Plaintiff is not pursuing claims against ASRC and Certified, so their bankruptcy proceedings are irrelevant. Furthermore, extended testimony regarding the bankruptcy proceedings will confuse the jury. The parties should also consult with each other and draft a brief proposed instruction about the nature of the bankruptcy proceeding for the Court to read to the jury when defendants seek to introduce the proof of claim.

**B.     Limitations on Anthony Huff's Trial Testimony.**

Plaintiff seeks to preclude Anthony Huff from testifying regarding excluded claims, defenses, and documents. Plaintiff also notes that Huff "has a strong tendency to voice his views and blurt out whatever he wants to say, including patently inadmissible hearsay, regardless of whether these comments are even responsive to a question." Plaintiff's Motion at p. 11. For that reason, plaintiff wants the Court to order Huff "not to make any off-hand statements or comments as to any matters which have been excluded by the Court." Id. All witnesses are precluded from testifying about matters that have been excluded, and counsel are expected to advise their witnesses that such issues should not be discussed during their trial testimony. Plaintiff also lists six other categories of testimony, including hearsay, that he believes Huff might attempt to testify about. The Court will not issue an advisory ruling on what Huff may and may not say. Rather, plaintiff can object if warranted when and if such testimony arises.

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION *IN LIMINE* - 3

**C.      Evidence Regarding Anderson's and Cascade's Alleged Wrongdoing.**

Plaintiff seeks to preclude defendants from introducing any evidence that Cascade and/or its former president and CEO, Harold Anderson, made any misrepresentations or nondisclosures prior to the sale of the company to a third party, Gudeman & Weiss ("G&W"). Specifically, defendants contend that Anderson misrepresented and failed to disclose various facts to the purchasing entity and to Danny Pixler, including (1) the financial condition of Cascade and its profitability, (2) Cascade's liability in an unrelated lawsuit, (3) the valuation of a Cascade subsidiary, Allied Pacific Adjusting Group, Inc., (4) the status of Cascade's California workers' compensation insurance license, and (5) Cascade's Board of Directors' agreement not to contest any attempt by the OIC to place Cascade into receivership. Defendants contend that Cascade and Anderson were negligent and had "unclean hands," which caused Cascade's damages.

Although defendants contend that plaintiff's own misrepresentations caused Cascade's damages, they have not explained that theory. Even if the alleged misrepresentations damaged *defendants*, they have not explained how they damaged Cascade. Instead, the crux of defendants' misrepresentation-related defenses is that if they had known the true facts, they would not have invested money to assist G&W in purchasing Cascade. The Court has already ruled, however, that defendants lack standing to assert claims based on the alleged misrepresentations regarding the stock purchase agreement. Order Denying Motion to File Third Party Complaint (Dkt. #81) at pp. 3-4 (explaining that defendants were neither parties to the purchase agreement nor third party beneficiaries of the contract). In a separate order, the Court struck defendants' affirmative defenses for fraudulent misrepresentation and non-disclosures by Cascade and/or Legend Holdings and their request for a set-off against plaintiff. Order Granting in

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION *IN LIMINE*- 4

Part and Denying in Part Motion to Strike (Dkt. #178) at p. 5 (holding that defendants could not assert claims based on fraud and misrepresentation in connection with the stock purchase agreement). Although defendants now seek to introduce the same alleged misrepresentations via other defenses, the Court's prior rulings precluded evidence of the misrepresentations, regardless of the name defendants give the defense. Moreover, plaintiff has explicitly stated that he does not plan to argue that defendants' actions caused the insolvency, failure, or collapse of Cascade. (Dkt. #229 at p. 3). For that reason, defendants do not need to counter that Anderson's or Legend's actions actually caused the collapse. Accordingly, the Court will preclude defendants from introducing any evidence regarding the alleged misrepresentations of Anderson or Legend in connection with the stock purchase agreement.

Nor can defendants "impute" Anderson's alleged wrongful conduct to Cascade as they contend. Defendants rely on *Post v. Maryland Casualty Co.*, 2 Wn. 2d 21 (1939) for the proposition that "Washington law has long permitted the fault of corporate officers to be imputed to the receiver who steps in the shoes of the corporation." Defendants' Response at p. 11. The *Post* case, however, does not stand for that broad proposition. Rather, the court explained, "It is elementary that one seeking the benefits of a contract cannot escape its burdens." Post, 2 Wn. 2d at 31 (explaining that the receiver, suing on a bond, "has no other or greater right to recover on the bond that the corporations (the obligees) would have had."). In this case, plaintiff is not suing to recover on the stock purchase agreement, so Anderson's alleged misconduct related to that contract should not be imputed to the receiver.

Plaintiff also seeks to exclude evidence that the Office of the Insurance Commissioner ("OIC") monitored the purchase and insurance transactions, that it was

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION *IN LIMINE*- 5

aware of Midwest's and Huff's roles in the transaction, that the OIC failed to advise defendants that Cascade consented to receivership, and that the OIC approved of the Risk Allocation Agreement. By previous order, the Court struck defendants' affirmative defense of estoppel. Specifically, defendants contended that plaintiff should be estopped from asserting its claim because the OIC "failed to inform the Defendants that the Board of Directors of Cascade had consented to a receivership proceeding, did not qualify for admission into California without the posting of unrealistically large amounts of capital and as a result could not continue to write new insurance business in California and was improperly capitalized." Defendants' Answer (Dkt. #133) at p. 15. The Court struck the affirmative defense because, among other reasons, defendants failed to show that the OIC owed them any duty of disclosure. Order Granting in Part and Denying in Part Motion to Strike (Dkt. #178) at p. 5. The order also precluded defendants from asserting a defense based on the OIC's alleged misconduct. Id. at p. 6. Therefore, defendants cannot assert an estoppel or failure to disclose defense. However, the Court has not previously addressed whether defendants can present evidence regarding the OIC's alleged knowledge of the facts that it contends defendants misrepresented. If plaintiff argues that it was unaware of certain facts, then defendants may introduce evidence to show its knowledge.

Finally, defendants seek to introduce evidence that Anderson knew about Huff's role in the transaction and about the other matters that plaintiff claims defendants failed to disclose. If plaintiff were alleging a simple breach of contract, the evidence might not be relevant. However, because plaintiff is also alleging fraud in the inducement, the knowledge of Cascade's president and CEO at the time are relevant to that claim. See, e.g., Second Amended Complaint at ¶ 9.20 (alleging that if defendants had made truthful

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION *IN LIMINE*- 6

1 disclosures, Cascade would not have entered into the transaction). Accordingly,
2 defendants will be permitted to introduce evidence regarding whether Anderson was
3 aware of the matters that plaintiff claims defendants misrepresented.

**D.     Evidence Regarding Plaintiff's Suit Against Anderson.**

Plaintiff seeks to exclude evidence that it brought suit against Anderson alleging negligence and ultimately settled the matter. Defendants have stated that they do not plan to introduce any evidence that Anderson settled the lawsuit with plaintiff. Defendants' Response at p. 14. However, defendants seek to introduce the complaint plaintiff filed against Anderson as a statement against interest. On that basis, the complaint is admissible under Federal Rule of Evidence 801(d)(2). It represents an admission that at least at one point, plaintiff believed that Anderson was aware of the facts that defendants allegedly misrepresented or failed to disclose. Accordingly, the complaint is relevant and admissible.

**E.     Economic Loss Rule.**

In response to plaintiff's motion *in limine*, Pixler argues that plaintiff's tort claims are barred by the economic loss rule. Pixler notes that after he obtained new counsel, his current counsel moved to reopen the dispositive motion deadline to assert that argument. The Court denied the motion. (Dkt. #227). Having denied the motion, the Court will not entertain Pixler's request, via a response to a motion *in limine*, to dismiss the tort claims.

For all of the foregoing reasons, plaintiff's motion *in limine* (Dkt. #215) is GRANTED IN PART AND DENIED IN PART as set forth above.[2]

---

[2] The Court notes that the findings and conclusions in this order, like all rulings *in limine*, are preliminary and can be revisited at trial based on the facts and evidence as they are actually presented. See, e.g., Luce v. United States, 469 U.S. 38, 41 (1984) (explaining that a ruling *in limine* "is subject to change when the case unfolds,

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION *IN LIMINE*- 7

During oral argument, defense counsel requested that the Court clarify when the trial will conclude. Based on the representations of counsel and the Court's assessment of the case, the Court anticipates that it will submit the case to the jury no later than Wednesday, May 19, 2010.

DATED this 15th day of April, 2010.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

particularly if the actual testimony differs from what was contained in the proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). Subject to these principles, the Court issues this ruling for the guidance of the parties.

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION *IN LIMINE*- 8