1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MIKE KREIDLER,

            Plaintiff,

      v.

DANNY L. PIXLER, *et al.*,

            Defendants.

Case No.  C06-0697RSL

ORDER DENYING MOTION FOR
JUDGMENT AS A MATTER OF
LAW OR FOR A NEW TRIAL

## I.  INTRODUCTION

This matter comes before the Court on a motion for judgment as a matter of law or, alternatively, for a new trial filed by defendants Anthony Huff, Sheri Huff, and Midwest Merger Management, LLC (collectively, "defendants").  For the reasons set forth below, the Court denies defendants' motion.

## II.  DISCUSSION

On May 3, 2010, a jury trial commenced in this matter.  On May 21, 2010, following deliberations, the jury rendered its verdict.  (Dkt. #348).  The jury found that defendant Midwest Merger Management, LLC ("Midwest") breached a contract with plaintiff and awarded $3,348,140 in damages on that claim.

The jury found defendants Anthony Huff and Danny Pixler liable for negligent misrepresentation and for fraud and awarded damages of $19,310,744 on those claims. The jury awarded the same amount of damages for plaintiff's civil conspiracy and Consumer Protection Act ("CPA") claims, for which it found all defendants liable.  The jury further found that Anthony and Sheri Huff and Midwest were liable for violations of the Criminal Profiteering Act and awarded plaintiff damages of $820,900 for that claim. The jury also found that Danny Pixler, Anthony Huff, and Midwest were liable for misappropriation and awarded plaintiff $3,348,140 in damages on that claim.

During the trial, the moving defendants orally moved for judgment as a matter of law and for a directed verdict.  The Court denied the motion.  Although defendant Danny Pixler also moved for judgment as a matter of law during the trial, he has not joined in this motion, nor has he filed a renewed motion.

**A.    Judgment As a Matter of Law.**

The Court may enter judgment as a matter of law under Federal Rule of Civil Procedure 50 "[i]f a party has been fully heard on an issue during a jury trial and the Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1).  As in this case, when the Court denies the motion during trial, a party may renew the motion after trial.  In ruling on the renewed motion, the Court may "(1) allow judgment on the verdict, if the jury returned a verdict, (2) order a new trial, or (3) direct the entry of judgment as a matter of law."  Fed. R. Civ. P. 50(b).

"'Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's.'"  McEuin v. Crown Equip. Corp., 328 F.3d 1028,

ORDER DENYING MOTION FOR JUDGMENT
AS A MATTER OF LAW OR FOR A NEW TRIAL - 2

1036 (9th Cir. 2003) (quoting Scott v. Ross, 140 F.3d 1275, 1281 (9th Cir. 1998)).  "A motion for judgment as a matter of law should be granted only if the verdict is "'against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'"  Id. (quoting EEOC v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997)).

## 1.    Alleged Inconsistency in the Verdict Regarding Sheri Huff.

The moving defendants argue that a new trial is warranted because the jury's responses to questions in the special verdict form were inconsistent.  Specifically, they argue that there is a "fatal inconsistency between the jury's exoneration of Sheri Huff for misappropriation or diversion of any of Cascade's funds on the one hand and the jury's finding of liability against Sheri Huff for civil conspiracy and violation of Washington's Criminal Profiteering Act . . . on the other."  Motion at p. 2.  Although a new trial must be granted if a jury's answers to special interrogatories cannot be reconciled, courts "do not find inconsistency lightly."  Norris v. Sysco Corp., 191 F.3d 1043, 1048 (9th Cir. 1999).  Rather,

> We are bound to find the special verdicts consistent if we can do so under a fair reading of them. When faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial.

Id. (quoting Toner v. Lederle Labs., 828 F.2d 510, 512 (9th Cir. 1987)).  Defendants contend that the jury did not find Sheri Huff liable for misappropriation of funds belonging to Cascade, which is inconsistent with the finding that she engaged in civil conspiracy and criminal profiteering.  However, plaintiff asserted that Sheri Huff engaged in the conspiracy in numerous ways, including enabling and assisting Anthony Huff in participating in the business of insurance in violation of federal law, an allegation which

ORDER DENYING MOTION FOR JUDGMENT
AS A MATTER OF LAW OR FOR A NEW TRIAL - 3

did not require any evidence of misappropriation.  Although the criminal profiteering claim was premised on theft, the jury's findings were not inconsistent.  In answering the special verdict form, the jury found Danny Pixler, Anthony Huff, and Midwest liable for misappropriation of premiums in the amount of $3,348,140, which is the exact amount due as the "Deductible Premium" as reflected in one of plaintiff's exhibits.  Therefore, the jury could have, and apparently did, find that Sheri Huff did not misappropriate the deductible premium, but engaged in theft regarding other sums belonging to Cascade.  In fact, the jury awarded plaintiff over $19 million in damages, so it found that Cascade was damaged in excess of the misappropriation damages.  The jury also awarded $820,900 against Anthony Huff, Sheri Huff, and Midwest for the criminal profiteering claim, highlighting that they believed that those damages were distinct from the misappropriation damages.  The jury's findings can be reconciled and are therefore not inconsistent.

> **2.      Sufficiency of the Evidence Against Sheri Huff.**

Defendants contend that there was insufficient evidence presented for the jury to find against Sheri Huff on any of plaintiff's claims against her.  However, there was sufficient evidence adduced at trial to support the allegation that Sheri Huff engaged in criminal profiteering.  Specifically, there was credible testimony from Michelle Brown, as well as documentary evidence, that Ms. Huff took substantial funds from Midwest for her own personal use.  Plaintiff's expert Paul Sutphen testified that funds due to Cascade were diverted and used for personal purposes.  That evidence also supports the civil conspiracy and CPA claims.  Those claims are further supported by the evidence presented that Sheri Huff participated in concealing Anthony Huff's ownership and control of Midwest, which facilitated Midwest's participation in an insurance matter and

ORDER DENYING MOTION FOR JUDGMENT
AS A MATTER OF LAW OR FOR A NEW TRIAL - 4

1   led to Cascade's losses.[1]  Ms. Huff permitted Mr. Huff to use her name as a substantial

2   owner of Midwest, even though she had no knowledge of or real responsibility for its

3   business affairs, for her own financial gain.  That evidence provided a legally sufficient

4   basis for the jury to find in plaintiff's failure and against Sheri Huff.

5   **3.     Sufficiency of the Evidence Against Anthony Huff and Midwest.**

6       The moving defendants contend that judgment as a matter of law in their favor is

7   warranted because of a lack of proof to support plaintiff's claims against Anthony Huff

8   and Midwest.  Defendants contend that there is no evidence that their actions damaged

9   plaintiff to support the CPA claim.  However, the jury found Anthony Huff and Midwest

10  liable for misappropriation of premiums due to Cascade.  Because the misappropriation

11  occurred in the context of an insurance matter, that finding is sufficient to show that

12  defendants' actions damaged Cascade for purposes of the CPA claim.

13      Regarding plaintiff's claims for fraud and negligent misrepresentation, defendants

14  argue that Cascade and Anderson knew about Huff's involvement before consummating

15  the workers' compensation transaction.  The evidence on which defendants rely shows

16  that John Ference, the Chief Underwriting Officer at Cascade, was aware that Huff had a

17  "proceeding" against him a month or two prior to the inception of the program.  Trial

18  Transcript at pp. 77-78.  When he learned that information, he reported it to Anderson,

19  who believed that Huff had not been convicted.  Id. at p. 78.  That testimony, however,

20  does not show that Cascade was aware of the extent of Huff's involvement.  Defendants

21  also argue that they had no duty to disclose the extent of Huff's involvement, that Huff

22  had been charged and convicted of diversion of insurance premiums, and that he had his

23

----

24      [1] It was undisputed that Anthony Huff could not participate in the insurance matter
    because of his prior felony conviction.

25

26  ORDER DENYING MOTION FOR JUDGMENT
    AS A MATTER OF LAW OR FOR A NEW TRIAL - 5

insurance license revoked for misconduct.  They further contend that Cascade could have

learned of those facts.  However, in ruling on the parties' cross motions for summary

judgment, the Court held that defendants had a duty to disclose Huff's involvement in the

transaction.  (Dkt. #196 at p. 12).  That ruling is the law of the case.  It is undisputed that

defendants did not disclose Huff's involvement or his criminal conviction before the

workers' compensation program began.  During trial, there was ample evidence that

Anthony Huff and Midwest actively concealed Huff's role in the transaction, including

placing ownership of Midwest in Ms. Huff's, Ms. Pixler's, and Ms. Brown's names.

Rather than disclosing his conviction, Huff told Anderson that his criminal *charges* would

be expunged by the end of the year.  Anderson Trial Testimony at p. 46; Trial Exhibit 59

(guilty plea).  Based on that evidence, the jury was entitled to conclude that Huff failed to

disclose and concealed his involvement and conviction to induce Cascade into the

workers' compensation transaction.  See Restatement (Second) of Torts, § 551.

In addition to the failure to disclose and concealment, the jury was entitled to find

that Huff affirmatively misrepresented that Cascade would continue to receive all funds

due.  When Anderson expressed concern about the payments, Huff reassured him that he

had "funds available" and would "stand behind our obligations."  Anderson Trial

Testimony at p. 49.  Huff reiterated his assurances in October 2004 when Anderson

expressed concern that the reserves were not being paid on time.  Id. at p. 55.  Although

defendants contend that there is no evidence that Anderson relied on Huff's assurances,

Anderson testified that he believed Huff.  Id. at pp. 47, 123.  Therefore, there was

sufficient evidence to support the jury's findings.

Defendants also contend that plaintiff failed to present sufficient evidence

regarding his claims for civil conspiracy, misappropriation, and criminal profiteering

ORDER DENYING MOTION FOR JUDGMENT
AS A MATTER OF LAW OR FOR A NEW TRIAL - 6

against Anthony Huff and Midwest.  As set forth above, plaintiff's expert Paul Sutphen testified, unrebutted, that funds meant for Cascade were diverted.  The moving defendants attempt to discredit his testimony by arguing that Mr. Sutphen was unable to opine regarding the exact amount of funds diverted.  That inability, however, was solely due to the co-mingling of funds and the improper manner defendants used to maintain their business records.  They should not be permitted to escape liability because they made it impossible to trace every dollar.  Moreover, plaintiff ample presented testimony and documents to show the amount of damages.

The moving defendants also attempt to discredit Mr. Sutphen's testimony by arguing that he did not review ASRC's records.  They did not present their own expert, however, to rebut or discredit Mr. Sutphen's testimony.  Moreover, the evidence showed that all of the workers' compensation payments, including those from ASRC, were paid over to Midwest.  Trial Testimony of Thomas Cunningham at pp. 59 (explaining that "all the dollars were paid to Midwest"), 60-61, 64, 101 (stating, "all of the workers' comp dollars were . . . sent over to Midwest."), 128-130, 133, 136, 144; see also Trial Exhibit 100; Trial Testimony of Thomas Bean at pp. 69-70, 144-45.  In light of that unrebutted testimony, there was no need for Mr. Sutphen to review ASRC's records to further confirm that all monies were paid over to Midwest.  Therefore, there was ample evidence of the diversion of funds to support the claims for criminal profiteering, civil conspiracy, violation of the CPA, and misappropriation.

**4.    The Risk Allocation Agreement.**

Defendants contend that the judgment against Midwest for breach of the risk allocation agreement must be reversed as a matter of law because the jury's finding was unsupported and because the issue was one for the Court, not the jury.  Even if the Court

1   were required to decide the issue, it would have found, as the jury did, that Cascade was a

2   third party beneficiary of the risk allocation agreement.  The RAA provides,

3       Midwest shall assume all responsibility for workplace accidents that occur during
        the term of this Agreement.  Specifically, Midwest shall (i) utilize its more stable
4       and established business assets to retain and service such Workers Compensation
        Insurance coverage as Midwest deems reasonable and prudent at its sole cost and
5       expense . . . .

6   The parties agreed that the RAA would be construed pursuant to the laws of New York.

7   Pursuant to the RAA, Midwest was responsible for providing a workers' compensation

8   program and making payments thereunder.  The employers/clients made their workers'

9   compensation payments to ASRC.  The premiums were deposited into a consolidated

10  bank account of Certified and were all paid to Midwest.  Midwest was responsible for

11  making payments directly to Cascade and did so to some extent.

12      New York has adopted the Restatement (Second) of Contracts, Section 302,

13  approach to determine whether an entity is a third-party beneficiary.  Section 302

14  distinguishes between an "intended" and an "incidental" beneficiary as follows:

15      (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a
        promise is an intended beneficiary if recognition of a right to performance in the
16      beneficiary is appropriate to effectuate the intention of the parties and either

17      (a) the performance of the promise will satisfy an obligation of the promisee to pay
        money to the beneficiary; or
18
        (b) the circumstances indicate that the promisee intends to give the beneficiary the
19      benefit of the promised performance.

20      (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

21  Septemberide Publ'g, B.V. v. Stein & Day, Inc., 884 F.2d 675, 679 (2d Cir. 1989)

22  (quoting Section 302).  Plaintiff argues that the parties intended for the RAA to benefit

23  Cascade because Midwest was required to pay for workers' compensation coverage and

24  Cascade ultimately provided that coverage.  Under New York law, "[w]here performance

25

26  ORDER DENYING MOTION FOR JUDGMENT
    AS A MATTER OF LAW OR FOR A NEW TRIAL - 8

is to be rendered directly to a third party under the terms of an agreement, that party must be considered an intended beneficiary." Cauble v. Mabon Nugent & Co., 594 F. Supp. 985, 991 (S.D.N.Y. 1984). In this case, although the RAA states that it is "binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns," RAA at § 13, it does not disclaim an intent to benefit third parties. Instead, it states that Midwest would be responsible for paying for the coverage, and Cascade was the intended recipient of those payments. The fact that Cascade was not named in the agreement is not dispositive. See, e.g., Flickinger v. Harold C. Brown & Co., Inc., 947 F.2d 595, 600 (2d Cir. 1991) (finding that a client was a third party beneficiary of an agreement to provide services for unnamed clients). In fact, in *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662-663 (2d Cir. 1996), the court found that a law firm, though unnamed in the relevant contract, was a third party beneficiary of an agreement to pay for legal services. Similarly, in this case, Cascade is a third party beneficiary of the agreement to pay the workers' compensation premiums. Therefore, even if the issue was one for the Court, the Court finds, as the jury correctly did, that Cascade was a third party beneficiary of the RAA.

**B.     New Trial Under Rule 59.**

Pursuant to Federal Rule of Civil Procedure 59, "The court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Following the rule, a trial court "is bound by those grounds that have been historically recognized. Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving

ORDER DENYING MOTION FOR JUDGMENT
AS A MATTER OF LAW OR FOR A NEW TRIAL - 9

1   party." <u>Molski v. M.F. Cable, Inc.</u>, 481 F.3d 724, 729 (9th Cir. 2007) (internal citation

2   and quotation omitted).  "The trial court may grant a new trial only if the verdict is

3   contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or

4   to prevent a miscarriage of justice."  <u>Passantino v. Johnson & Johnson Consumer Prods.</u>,

5   212 F.3d 493, 510 n.15 (9th Cir. 2000).

6       The moving defendants contend that a new trial is warranted because the

7   instructions and verdict form produced an inconsistent verdict as to Sheri Huff.  As set

8   forth above, the findings were not inconsistent, so that issue does not support a new trial.

9       The moving defendants also contend that a new trial is warranted because the

10  instructions regarding civil conspiracy and criminal profiteering improperly failed to

11  instruct the jury as to the underlying acts of the conspiracy and to request a finding as to

12  whether defendants committed those acts.  The Court, however, gave instructions and a

13  special verdict form that were substantively identical to those proposed by defendants.

14  Defendants never requested or proposed an instruction or a verdict form that included a

15  request for a specific finding regarding the predicate acts.  Moreover, the instructions

16  accurately stated the law, included the required elements, and where necessary, provided

17  definitions of key terms such as "criminal profiteering."  <u>See</u> Instruction Nos. 26, 27

18  (Criminal Profiteering) and Instruction No. 31 (Civil Conspiracy).  The instructions also

19  stated that a civil conspiracy requires proof "that two or more people or entities conspired

20  to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful

21  means."  The instructions also defined "theft" and participating in the business of

22  insurance, unlawful acts that were consistent with plaintiff's theory of the case.  Based on

23  those clear instructions and unlike in the case on which defendants rely, the jury was not

24  free to find a conspiracy based "on acts with which they disagreed, whether unlawful or

25

26  ORDER DENYING MOTION FOR JUDGMENT
    AS A MATTER OF LAW OR FOR A NEW TRIAL - 10

1  not." <u>Banc One Capital Partners Corp.</u>, 67 F.3d 1187, 1196 (5th Cir. 1995) (cited in

2  Defendants' Motion at p. 26).

3       Defendants also argue that the instructions and special verdict form "simply asked

4  the jury to find whether or not Cascade is entitled to damages for breach of the [RAA]

5  without requesting that the jury first find that Cascade was indeed a third-party

6  beneficiary of the RAA under New York law."  Motion at p. 28.  Contrary to defendants'

7  assertion, the instructions and verdict form did not simply assume that Cascade was a

8  third party beneficiary.  Rather, Instruction No. 18 specifically stated that plaintiff must

9  prove "each of the following propositions," which included that Cascade was a third party

10 beneficiary as defined in Instruction No. 19 on the following page.  Therefore, the jury

11 was explicitly instructed to consider whether Cascade was a third party beneficiary.

12      Finally, the moving defendants contend that Instruction No. 30 ("Participating in

13 the Business of Insurance") "lead the jury to base its verdict on passion and prejudice –

14 particularly as to Anthony Huff, who was found liable in this case solely due to his status

15 as a previously convicted felon – rather than the facts of this case . . . ."  Motion at p. 4.

16 Defendants have not presented any evidence, and there is none, to show that the jury

17 based its verdict on passion and prejudice rather than on the evidence presented as they

18 were instructed.  Although defendants contend that the instruction improperly references

19 "the law" but fails to cite it, they have not shown that such a citation is required.  More

20 fundamentally, they successfully argued for the removal of the applicable law from the

21 instruction, so they cannot now claim prejudice based on their own decision.

22 Accordingly, a new trial is not warranted.

### III.  CONCLUSION

24      For all of the reasons set forth above, defendants' motion for judgment as a matter

26 ORDER DENYING MOTION FOR JUDGMENT
   AS A MATTER OF LAW OR FOR A NEW TRIAL - 11

1    of law or for a new trial (Dkt. #388) is DENIED.

2

3            DATED this 3rd day of January, 2011.

4

5

6

7                                            Robert S. Lasnik
                                             United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    ORDER DENYING MOTION FOR JUDGMENT
      AS A MATTER OF LAW OR FOR A NEW TRIAL - 12